Summers, J.
In March, 1908, the council of the city of Akron passed an ordinance providing-for a bond issue of thirty thousand dollars, for the purpose “of purchasing real estate for public purposes, to-wit, for erecting thereon and'equipping a building necessary for the fire department, and for purchasing a fire engine, and for improving and equipping fire stations 2, 3, 5 and 7, all of said fire stations being buildings used for public purposes, to-wit, for the fire department of said city.”
Prior to the 6th day of April, 1908, the bonds *72 were duly issued and sold, and the proceeds paid into the treasury of the city. Upon the 6th day of April, 1908, the council passed an ordinance authorizing and empowering the directors of public safety to expend the sum of thirty thousand dollars, realized from the sale of said bonds, for the purpose stated in the first mentioned ordinance. The last mentioned ordinance further authorized the directors to enter into contracts “with the lowest and best bidder, after advertisement according to law.”
In June, 1908, the directors of public safety advertised for bids for three combination hose and chemical wagons, in accordance with specifications adopted by the directors. The Webb Motor Fire Apparatus Company bid to furnish three combination hose and chemical wagons, in accordance with the specifications, for $11,950, or according to specifications submitted by the company for $13,500.
On July 7, 1908, the directors awarded the contract to The Webb Motor Fire Apparatus Company for furnishing said engines according to the company’s specifications for-$13,500.
In November, 1908, the compan)'' delivered in said city the three combination hose and chemical wagons provided for by the contract. The wagons were not delivered to the directors, but remained in the custody of the company.
On November 27, • 1908, the defendant in error, plaintiff below, requested the citv solicitor to a only for an injunction to restrain the directors from making payment for the apparatus. The city solicitor did not make the application, and on *73 November 30, 1908, the plaintiff brought suit for an injunction.
Thereafter on December 11, 1908, the directors passed a motion rejecting the bid of The Webb Motor Fire Apparatus Company, and all other bids under its former advertisement, and re-advertised for bids for three combination hose and' chemical wagons in accordance with new specifications which had been adopted by the directors, and which were substantially the same as the specifications which had been theretofore submitted by said company. Bids were received from The Webb Motor Fire Apparatus Company and from one other company, each in the sum of $13,500 to furnish such apparatus.
On December 23, 1908, the bid of one company was'rejected on the ground of informality and the bid of The Webb Motor Fire Apparatus Company was accepted and a contract entered into with it. A supplemental petition was filed setting out the transactions subsequent to the filing of the petition. The court of common pleas found the issues in favor of the defendants and dismissed' the petition. On appeal, 'the circuit court found the facts above stated, and also that the combination hose and chemical, wagons were necessary fire apparatus in cities the size of the city of Akron, and that in the judgment of the directors of public safety it was necessary to purchase said wagons for use in stations 2, 3 and 5 of said city, but enjoined the directors from paying for the same out of the proceeds of said sale of bonds on the ground that the city was not authorized by law to issue bonds for that purpose.
*74 It is contended, first, that the city council neither authorized nor approved the contract; second, that the city auditor did not certify to the council that the money was in the city treasury to meet the contract, and third, that the municipal code does not authorize the issuing of bonds for the purchase of such apparatus.
Section 283S, Revised Statutes, provides that the council of any municipal corporation shall have power to issue its bonds, whenever the council by an affirmative vote of not less than two-thirds of the members elected or appointed thereto shall by resolution or ordinance, deem the same necessary for any of the purposes provided for in the section, among which purposes are these: “2.
For extending, enlarging, improving, repairing or securing a more complete enjoyment of any building or improvement authorized by this section, and for equipping and furnishing the same.” “27. For erecting any building necessary for a fire department, purchasing fire engines, fire boats, constructing water towers, and fire cisterns, and paying the cost of placing underground the wires or other signal apparatus of any fire department.” The contention is, that paragraph 27 expressly mentions fire engines; that the maxim expressio unius est exclusio alterius applies, and that a combined chemical and hose wagon is not a fire engine, and that if it is, the ordinance does not authorize the purchase of three; and that recourse to paragraph 2 cannot be had under the well settled rule of statutory construction, that where there are in acts specific provisions relating to a particular subject, chey will govern in respect to that subject as *75 against general provisions contained in the same act.
We think counsel take too narrow a view of the statute. The original act was passed in 1879 (76 Ohio Laws, 158), and as it remained until the passage of the Longworth Law, 1902 (95 Ohio Laws, 318), mentioned not only fire engines, but also hose and apparatus. The purpose of the act was to enable a city, with the approval of the electors, to issue bonds for any improvement for which it might levy a tax. The evident purpose of the original provisions of the act was to enlarge the specific provisions or to cover omissions. Rules of interpretation are adopted to assist in ascertaining, and not to defeat, the intention of the legislature, and hence the. rules referred to are not applicable. The purpose of the Long-worth Law was to make the statute so comprehensive as to leave no excuse for constant appeals to the general assembly for special laws authorizing the issuing of bonds, and if the purpose of the general provisions was, as has been suggested, then the omission of the words “hose and apparatus” from paragraph 27 does not indicate an intention to limit the general provisions of paragraph 2.
The next question is, whether the council authorized the contract? Section 154 of the municipal code of 1902 (Section 1536-690, Revised Statutes), provides as follows:
“The directors of public safety shall have power to make all contracts and expenditures of money for acquiring lands for the erection or repairing of station houses, and for the erecting and build *76 ing of all station houses, police stations, fire department buildings, fire cisterns, and plugs that may be required, and for the purchase of engines, apparatus, and all other supplies necessary for the police and fire departments; provided that no obligation involving an expenditure of more than five hundred dollars shall be created except upon the approval of the city council and by written contract which shall be awarded to the lowest and best bidder after advertising for ten days in a newspaper of general circulation in the city. They shall make no sale or disposition of any property belonging to the city without first being authorized by resolution or ordinance of the city council.”
Section 123 of the municipal code (Section 1536-618, Revised Statutes), provides as follows:
“The powers of council shall be legislative only, and it shall perform no administrative duties whatever and it shall neither appoint nor confirm any officer or employe in the city government except those of its own body, except as may be otherwise provided in this act. All contracts requiring the authority of council for their execution shall be entered into and conducted to performance by the board of officers having charge of the matters to which they relate, and after authority to make such contracts has been given and the necessary appropriation made, council shall take no further action thereon.”
Prior to the adoption of the municipal code of 1902, the city council was an administrative, as well as a legislative body, and one of the reforms contemplated by the adoption of the new code was to make its powers legislative only. The two *77 sections referred to do not make clear the precise mode of procedure when an expenditure of more than five hundred dollars is to be made by the directors of public safety. Bids must be advertised for, and a written contract made by the directors with the lowest and best bidder, and the necessary appropriation must be made, and the expenditure be approved by the council, but whether the appropriation and the approval may be made before bids are received and a contract entered into, or whether the exact amount of the expenditure, and the precise contract to be made, must be approved by the council, is not - definitely stated. If the latter is the mode prescribed, then the directors of public safety, instead of being one of the departments of the city, invested with a part of the executive power and authority of the city government, are merely a committee of the city council. The council provides the money for carrying on the government, either by a levy of taxes, or an issue of bonds, and it is proper that it should have some control over the expenditures, but considering these sections in the light of the purpose of the code we think their requirements are met by an ordinance making an appropriation and stating generally the purpose for which it is made, and authorizing the directors to enter into contracts to effect that purpose If the directors do not have or retain the confidence of the council, it is in the power of the council to be more spécific.
It is also contended that the contract is void because the auditor did not certify to the council that the money required for the contract was in the city treasury as prescribed by Section 1536-205, *78 Revised Statutes. The supplemental petition avers that the auditor did not so certify. This is denied by the answer in the circuit court, and that court does not make any finding upon that issue. This contract cannot create an obligation against the city in the nature of a debt, to meet which no funds have been provided. The council issued and sold the bonds and appropriated the proceeds to meet the expenditures it authorized, and any obligations incurred by the ordinance under the authority conferred are payable only out of the appropriation, so that the section can have no application to such a case.
Judgment is reversed, the injunction dissolved and the petition dismissed.

Reversed.

Spear, Davis, Si-iauck and Price, JJ., concur.